UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., § <br> § <br> Plaintiff, § <br> VS. § <br> § <br> DA GARCIA, LLC; dba DB LOUNGE, *et* § <br> *al*, § <br> § <br> Defendants. § | CIVIL ACTION NO. 7:17-CV-00268 |

## OPINION

The Court now considers J&J Sports Productions, Inc.'s ("Plaintiff") motion for summary judgment.[1] After duly considering the record and relevant authorities, the Court **GRANTS** the motion as follows.

### I. BACKGROUND

Plaintiff is the exclusive license company authorized to sub-license the telecast of a particular July 2014 boxing event (the "Event")[2] to commercial establishments in Texas.[3] Defendant DB Lounge is a Texas bar that aired the Event to its patrons (on four televisions and two projectors)[4] without obtaining authorization from Plaintiff.[5] DB Lounge advertised that it would air the Event on its internet site.[6] Defendant DA Garcia, LLC did business as "DB Lounge," at that time, and "owned and operated the Establishment."[7] Defendant Humberto

---

[1] Dkt. No. 19.
[2] The Event was called "Honor + Glory," and included a bout between Saul Alvarez and Erislandy Lara, as well as other undercard events.
[3] *See* Dkt. No. 19-1 pp. 13–18 (the contract conferring this exclusive right upon Plaintiff).
[4] *Id*. p. 96.
[5] *See id*. pp. 20 (affidavit of Plaintiff's auditor stating auditor visited DB Lounge on the night in question, and that DB Lounge was airing the Event); *see also id.* p. 7, ¶ 8 (Defendants were not licensed to air the Event).
[6] *Id*. pp. 30–32.
[7] Dkt. No. 1 pp. 1–2.

Arriaga is also the owner and manager of DB Lounge,[8] and he was on duty on the night in question.[9]

Plaintiff sued Defendants in federal court, alleging violations of the §§ 553 and 605 of the Federal Communications Act ("FCA").[10] Defense counsel failed to appear at the initial pretrial conference,[11] and Defendants failed to timely respond to Plaintiff's subsequent (and the instant) motion for summary judgment. Thus, for all practical purposes, it appears Defendants have abandoned this case. By operation of the Local Rules,[12] Plaintiff's motion for summary judgment is now unopposed and ripe for review. The Court now turns to its analysis.

## II. LEGAL STANDARD

In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[13] The burden then shifts to the non-movant to demonstrate the existence of a genuine issue of material fact.[14] Summary judgment is only proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "A fact is 'material' if its resolution could affect the outcome of the action,"[16] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[17] As a result, "[o]nly disputes over facts that might affect the

---

[8] *Id.* p. 2.
[9] Dkt. No. 19-1 p. 99.
[10] Dkt. No. 1 p. 5.
[11] *See* Dkt. No. 18 (fining Defense counsel $150.00 for this failure).
[12] *See* LR 7.2–7.4 of the Local Rules of the Southern District of Texas (rendering motions unopposed if the non-movant fails to respond within twenty-one days of the motion's filling). Here, Plaintiff's motion for summary judgment was filed on May 5, 2018 (*see* Dkt. No. 19), and more than twenty-one days has now elapsed without any response from Defendants.
[13] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[14] *See Celotex Corp.*, 477 U.S. at 323.
[15] Fed. R. Civ. P. 56(a).
[16] *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[17] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).

outcome of the suit under the governing law will properly preclude the entry of summary judgment."[18]

In conducting its analysis, the Court may consider evidence from the entire record and must view that evidence in the light most favorable to the non-movant.[19] Rather than combing through the record on its own, the Court looks to the motion for summary judgment and response to present the evidence for consideration.[20] Parties may cite to any part of the record, or bring evidence in the motion and response.[21] By either method, parties need not proffer evidence in a form admissible at trial,[22] but must proffer evidence substantively admissible at trial.[23]

**III. ANALYSIS**

The Court's analysis in this case is three-fold. The Court first (A) discusses the applicable statute of limitations. Then, (B) it turns to the merits of the instant motion. Finally, finding that summary judgment in Plaintiff's favor is warranted, the Court (C) addresses damages.

A. *The Statute of Limitations*

Plaintiff filed the instant suit nearly three years after the alleged violation occurred. The alleged violation occurred on July 12, 2014, and the instant suit was filed on July 10, 2017, two days short of three years later. Defendants' answer includes the statute of limitations as one of their affirmative defenses.[24] Although neither party has briefed this issue, it is potentially dispositive of the instant motion, and thus the Court addresses it sua sponte.

---

[18] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[19] *See Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000) (citations omitted).
[20] *See* Fed. R. Civ. P. 56(e).
[21] *See* Fed. R. Civ. P. 56(c).
[22] *See Celotex Corp.*, 477 U.S. at 324 ("We do not mean that the non[-]moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").
[23] *See Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) ("[T]he evidence proffered by the plaintiff to satisfy his burden of proof must be competent and admissible at trial.").
[24] Dkt. No. 10, p. 3.

Although the FCA does not specify any limitations period, the Fifth Circuit has announced that the applicable limitations period is three years.[25] Nevertheless, the applicable limitations period does not begin to accrue until Plaintiff begins diligently prosecuting its claims by both filing suit and seeking service of process. In this case, Plaintiff did not request issuance of summons until *five days after* the statute of limitations expired.[26] Furthermore, service upon Defendants was not effectuated until *five and one-half weeks after* the statute of limitations expire.[27] However, Defendants failed to respond to the instant motion for summary judgment, and thus failed to press this point. The Court will not reward Defendants' complete lack of opposition to the present motion.

        B.      *Merits of the Instant Motion*

Summary judgment in Plaintiff's favor is warranted here. Although Plaintiff pleads that Defendants violated two separate provisions of the FCA—§§ 553 and 605[28]—Plaintiff's evidence shows that the Event in this case was wirelessly transmitted.[29] Since only § 605 applies to wireless transmissions,[30] the Court only proceeds to analyze Plaintiff's § 605 claim.

The FCA is a *strict* liability statute, and thus, "to prove a violation, the plaintiff need only show that the Event was shown in the defendant's establishment without the plaintiff's authorization."[31] Here, the undisputed evidence shows that Defendants aired the Event in their

---

[25] *See Prostar v. Massachi*, 239 F.3d 669, 677 (5th Cir. 2001) (refusing to revert to state-law limitations periods, and applying the three-year limitations period applicable to the Federal Copyright Act).
[26] *See* Dkt. No. 4 (the request for issuance of summons was filed on July 17, 2017, and the alleged violation giving rise to this case occurred on July 12, 2014, three years and five days earlier).
[27] *See* Dkt. Nos. 5 & 6 (services was effectuated upon Defendants on August 22, 2017, approximately three years, five and one-half weeks after the date of the alleged violation).
[28] Dkt. No. 1 p. 5.
[29] *See* Dkt. No. 19-1 p. 7, ¶ 6.
[30] *See J&J Sports Productions, Inc. v. Barajas,* 2018 WL 1992668, at *2 (S.D. Tex. Apr. 27, 2018); *see also J&J Sports Productions, Inc. v. Tepatitlan Mexican Kitchen, Inc.*, 2016 WL 8710461, at *3 (S.D. Tex. Oct. 21, 2016);
[31] *Barajas*, 2018 WL 1992668, at *2 (quoting *Joe Hand Promotions, Inc. v. Lee*, 2012 WL 1909348, at *3 (S.D. Tex. May 24, 2012).

commercial establishment without Plaintiff's authorization.[32] Thus, summary judgment in Plaintiff's favor is warranted under § 605 of the FCA.

### C. *Damages*

Neither party has requested a jury trial, so none is required on the issue of damages. Furthermore, Plaintiff has fully briefed the issue of damages, and Defendants waived their opportunity to do so by failing to timely respond to the instant motion. Thus, the Court proceeds to determine what damages Plaintiff is entitled to, beginning with (i) statutory penalties, and then turning to (ii) attorney's fees and costs.

#### i. *statutory penalties*

*Legal Standard*

Section 605(e)(C) of the FCA allows successful claimants to elect either actual damages or statutory damages. Here, Plaintiff has elected statutory damages.[33] When calculating statutory damages, courts impose a baseline penalty of $1,000 to $10,000 per violation, depending upon what is just under the circumstances.[34] The baseline statutory penalty should be more than the licensing fee the defendant evaded, in order to deter such conduct.[35] However, the maximum baseline of $10,000 should be reserved for cases in which the plaintiff suffered substantial harm or the defendant profited greatly as a result of the unlawful conduct.[36]

Courts employ two different methods to determine what constitutes a "just" baseline statutory penalty: "One approach is to base the award of damages on the number of patrons in the establishment at the time of the violation. . . . Another method is to award a flat sum for

---

[32] Dkt. No. 19-1 p. 7, ¶ 8 (Defendants did not have authorization from Plaintiff to air the Event); *id*. pp. 20, 30, 31, and 32 (Defendants aired the event to their patrons anyway). Defendants' admissions and interrogatory answers also establish that they aired the Event without authorization from Plaintiff. S*ee* Dkt. No. 19-1 pp. 65–99.
[33] Dkt. No. 19 p. 12, ¶ 11 ("Plaintiff elects to receive statutory damages.").
[34] 47 U.S.C.A. § 605(e)(c)(i)(II) (West).
[35] *See Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1174 (S.D.N.Y. 1983).
[36] *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001).

damages."[37] The first of these methods—the per-patron method—seeks to estimate the overall profits derived from the violation. The second method is reserved for situations where full compensation, deterrence, and particularly-willful conduct warrant a lump sum.[38] Here, the Court will employ the lump-sum method because it results in a baseline statutory figure that is greater than the licensing fee Defendants evaded. The lump-sum method is also warranted here to ensure full compensation to Plaintiff and deterrence given Defendants particularly willful conduct.

Courts may then increase the baseline statutory penalty by no more than $100,000 per violation if the defendant's violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain . . . ."[39] The FCA does not define "willfully," but courts inquire whether a defendant's conduct entailed a "disregard for the governing statute and an indifference for its requirements."[40] Federal courts in Texas tend to infer such indifference for § 605(a)'s requirements when "the defendant exhibited the telecast at a commercial establishment without proper authorization."[41] Moreover, courts also tend to infer indifference "because of the sheer unlikelihood that a defendant could accidentally intercept or receive a scrambled cable or satellite signal."[42]

---

[37] *Entm't by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002) (collecting cases).
[38] *See Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001); *Cablevision Sys. New York City Corp. v. Faschitti*, No. 94 CIV. 6830 (DC), 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996).
[39] 47 U.S.C.A § 605(e)(c)(ii) (West).
[40] *J&J Sports Productions, Inc., as Broad. Licensee of the September 14, 2013 The One: Floyd Mayweather, Jr. v. Saul Alvarez WBC Middleweight Championship Fight Program, Plaintiff*, 2017 WL 2297029, at *4 (W.D. Tex. May 24, 2017) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)).
[41] *J&J Sports Productions, Inc.*, 2017 WL 2297029, at *4 (citing *Kingvision Pay-Per-View, Ltd. v. Valles*, 2001 WL 682205, at *3 (W.D. Tex. Mar. 30, 2001)).
[42] *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008).

*Analysis*

Given Defendants' capacity, their licensing fee would have been $1,800.00.[43] Given the ostensible flagrancy of Defendants' violation (*e.g.*, advertising their unlawful showing of the Event to promote business and effectuating this violation on four televisions and two projectors), and also to promote deterrence of future violations, the Court triples this figure to $5,400.00 as the just baseline lump-sum penalty.

Plaintiff contends that this figure should be further enhanced because Defendants' violation was committed willfully and for the purposes of commercial advantage.[44] The Court agrees. Defendants' violation was willful because there is no other reasonable explanation for how Defendants received and decoded a *scrambled*[45] wireless signal. As one court rightly noted: "[s]ignals do not descramble spontaneously . . . ."[46] It is also self-evident that Defendants' violation was committed for the purpose of commercial advantage; why else would someone willfully and unlawfully air a prime-time boxing match at a for-profit commercial establishment? The fact Defendants *advertised* that they were going to air the Event indicates they were trying to attract more patrons to their establishment than would otherwise have attended on July 12, 2014. Defendants charged their patrons for food and drinks that night.[47] Under these circumstances, the Court finds that Defendant's statutory penalty should be enhanced by an additional $5,000.00, for a total of **$10,400.00**.

---

[43] *See* Dkt. No. 19-1 p. 34 (Plaintiff's licensing fee for the Event was $1,800.00 for commercial establishments with a capacity of 101–200 people); *see also id*. p. 21 (Plaintiff's auditor estimates that "[t]he capacity of this establishment is approximately 160 people.").
[44] Dkt. No. 19 pp. 15–19.
[45] *See* Dkt. No. 19-1 p. 7, ¶ 6.
[46] *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999).
[47] Dkt. No. 19-1 p. 8, ¶ 11; *id*. p. 72.

### ii. attorney's fees[48] & costs

Under § 605, the Court "shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."[49] To determine the proper award of attorneys' fees, the Court first calculates the *Lodestar* fee: the result of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly billing rate.[50] The Court then considers the *Lodestar* fee in light of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*[51] ("Johnson factors") and may, in its discretion, revise the *Lodestar* amount accordingly.[52]

Here, Plaintiff requests eight hours of legal fees charged at $250.00 per hour, for a total of $2,000.00.[53] This is the correct *Lodestar* fee. Eight hours is reasonable given Plaintiff's counsels' activities in this case. Plaintiff's counsel filed a complaint,[54] a certificate of interested parties,[55] effectuated service on Defendants,[56] filed a motion to continue the initial pretrial conference,[57] and filed a motion to extend the time to file a joint discovery case management plan.[58] Plaintiff's counsel also conducted a Rule 26(f) conference with Defense counsel and together they filed a joint discovery case management plan.[59] Plaintiff's counsel also attended the initial pretrial conference,[60] filed a status report,[61] and then filed a twenty-one page motion for

---

[48] Plaintiff's counsel requests *either* a one-third contingent fee award *or* attorney's fees calculated using the *Lodestar* method. *See* Dkt. No. 19-1 pp. 38–43. Consistent with this request, the Court proceeds to award attorney's fees using the *Lodestar* method.
[49] 47 U.S.C. § 605(e)(3)(B)(iii).
[50] *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).
[51] 488 F.2d 714, 717–19 (5th Cir. 1974).
[52] *See Watkins*, 7 F.3d at 457.
[53] Dkt. No. 19-1 p. 40, ¶ 9.
[54] Dkt. No. 1.
[55] Dkt. No. 2.
[56] Dkt. Nos. 5 & 6.
[57] Dkt. No. 7.
[58] Dkt. No. 8.
[59] Dkt. No. 11.
[60] *See* docketed minutes for the initial pretrial conference in this case.
[61] Dkt. No. 15.

summary judgment,[62] along with one-hundred and one pages of supporting evidence.[63] Thus, eight hours of work for Plaintiff's counsels' legal services is warranted.

Plaintiff's request for $250.00 per hour is also reasonable given the nature of this case and Plaintiff's counsels' expertise in this area of the law. Indeed, this Court has previously found $250.00 per hour to be a reasonable fee for Plaintiff's counsels' services in very similar cases.[64] Multiplying the reasonable number of hours expended by Plaintiff's counsel in this case (eight) by the reasonable hourly rate ($250.00 per hour), the *Lodestar* fee is $2,000.00. Because no *Johnson* adjustments are necessary under the circumstances, **$2,000.00** in attorney's fees is ultimately warranted.

Plaintiff also requests conditional attorney's fees should this case be litigated any further.[65] After reviewing the record and the nature of this case, the Court awards conditional attorney's fees as follows:

- $3,000 in the event Defendants file a motion to vacate, Rule 60 motion, motion for new trial, motion for reconsideration or other post-judgment, pre-appeal motion that does not result in a reversal of the Judgment obtained in this action;

- $10,000 in the event Defendants file an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

- $5,000 in the event Defendants file a motion for rehearing or reconsideration in the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

- $5,000 for making and/or responding to a petition for writ of certiorari to the United States Supreme Court that does not result in a reversal of the Judgment obtained in this action;

---

[62] Dkt. No. 19.
[63] Dkt. No. 19-1.
[64] *See e.g., J&J Sports Productions, Inc. v. Barajas*, 2018 WL 1992668, at *3 (S.D. Tex. Apr. 27, 2018).
[65] *See* Dkt. No. 19-1 pp. 42–43.

- $10,000 for an appeal to the United States Supreme Court in the event a writ of certiorari is granted and does not result in a reversal of the Judgment obtained in this action; and

- $2,500 for collection of the judgment rendered in this case, should Plaintiff obtain a writ of execution, writ of garnishment, writ of attachment or other process.

Lastly, the Court awards court costs to Plaintiff pursuant to § 605(e)(3)(B)(iii).[66]

### IV. HOLDING

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment.[67] Judgment is hereby entered in the amount of **$10,400.00** (in statutory penalties), **$2,000.00** in attorney's fees, conditional attorney's fees as listed above, and costs pursuant to § 605(e)(3)(B)(iii). Post-judgment interest shall accrue at a rate of 2.23%.[68] A separate final judgment will issue.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 8th day of June, 2018.

_____
Micaela Alvarez
United States District Judge

---

[66] "The Court shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."
[67] Dkt. No. 19.
[68] *See* 28 U.S.C. § 1961(a) (2000) (Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."); http://www.txs.uscourts.gov/page/post-judgment-interest-rates.